IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 08-3074-01-CR-S-ODS |
| ) | |
| CARLOS JAVIER FAJARDO-FAJARDO, ) | |
| ) | |
| Defendant. ) | |

ORDER AND OPINION DENYING MOTION FOR JUDGMENT OF ACQUITTAL

Pending is Defendant's Motion for Judgment of Acquittal (Doc. # 46). For the following reasons, Defendant's motion is denied.

Defendant was charged with being an alien found unlawfully within the United States after having been previously deported. The trial lasted one day; the jury returned a verdict of guilty on the one-count indictment the same day. Defendant contends the Government did not provide sufficient evidence relating to the fourth element of the offense – that Defendant had not received the consent of the Attorney General of the United States or the Secretary of the Department of Homeland Security to apply for readmission to the United States since the time of his deportation. The jury heard the following evidence related to the contested fourth element:

1. Testimony by Springfield Police Officer Anthony Davis that, after encountering Defendant during the regular course of his duties, Defendant presented a Mexican drivers license and voter registration card bearing his photograph and identifying himself as "Pedro Duran." Defendant told Officer Davis that he thought he was "an illegal," and later that he was "waiting on his green card."

2. Testimony by Immigrations and Customs Enforcement ("ICE") Agent Max Pulley that while fingerprinting Defendant, Defendant admitted he was not named Pedro Duran, that he was not from Mexico, and that he was actually named Carlos Javier Fajardo-Fajardo.

3. Testimony from Agent Pulley that Defendant's Alien File ("A-File"), the record of

all interactions an alien has with ICE, contained a Final Administrative Removal Order, admitted as Government Exhibit 7, showing Defendant was ordered removed from the United States on March 17, 2004, that he was served with the Order on April 1, 2004, and that he waived petition for review. Agent Pulley also testified that Defendant's A-File contained a Warrant of Removal, admitted as Government Exhibit 8, bearing Defendant's photograph, fingerprints, and signature, as well as the signature of the officer who witnessed his removal from the United States on June 16, 2004, on United Airlines Flight 865, which departed Los Angeles International Airport for Honduras.

4. Testimony from Agent Pulley that Defendant's A-File contained no record that Defendant had ever applied for permission to re-enter the United States after having been deported, or that he had been granted such permission.

5. Testimony from Agent Pulley about Government Exhibit 3, Defendant's June 2, 2008 sworn statement. After being advised of and waiving his rights, Defendant admitted he was Carlos Javier Fajardo-Fajardo; that he was a citizen of Honduras and had never been admitted into the U.S. as a permanent resident; that he was last deported from the U.S. in 2004; that he last entered the U.S. on February 5, 2007 by foot near El Paso, Texas, without inspection or admission by an immigration officer; and that he had not obtained permission from the United States Attorney General or the Secretary of Homeland Security to re-enter after deportation.

6. Testimony from Agent Pulley regarding the Integrated Automated Fingerprint Identification System and Government's Exhibit 10, a printout of records of Defendant's contacts with the U.S. Government. The testimony and exhibit, admitted pursuant to Fed. R. Evid. 404(b) on the issue of Defendant's motive and absence of mistake, showed that Defendant was apprehended by the U.S. Border Patrol three miles east of Laredo, Texas, on December 30, 2001. During that encounter, Defendant said his name was "Gustavo Huerta" and claimed Mexican citizenship.

7. A certified record of the Defendant's prior state convictions in Colorado for

"Forgery – Government Issued Document" and "False Reporting – False Identification," introduced under Fed. R. Evid. 404(b) to show Defendant's motive and absence of mistake that he did not have permission to be present in the U.S.

8. Testimony from ICE Agent Andrew Mitchell. Agent Mitchell testified that the central index system, the computer system containing records of aliens' applications for benefits, contained no record of the Defendant having been granted a permanent resident alien card and no record that he had received any benefit or permission for any purpose.

Defendant contends that the Government could only establish the element of lack of consent to re-enter by introducing a Certificate of Nonexistence of a Record ("CNR"), signed by an official authorized under 8 C.F.R. § 103.7(d)(4). That regulation states:

> (d) Authority to certify records. Whenever authorized under 5 U.S.C. 552 or any other law to furnish information from records to persons entitled thereto, the following officials, or their designees authorized in writing as specified below, have authority to make certification, as follows: . . .
> (4) The Assistant Commissioner, Records Systems Division, the Director, Records Management Branch, or the Chief, Records Operations Section, Central Office, or their designee, authorized in writing to make certification in their absence – the non-existence of an official Service records.

8 C.F.R. § 103.7(d)(4).

Defendant argues that the Government did not produce the appropriate government official or the CNR showing that Defendant had not reapplied for admission to the United States, and that these were the only means of proving the fourth element of the offense. Defendant further argues that his post-arrest statements should have been excluded because they lacked sufficient independent corroboration without the certified CNR. See Opper v. United States, 348 U.S. 84, 90-91 (1954) (holding that confessional statements must be accompanied with independent corroborating evidence).

Defendant provides no authority for the proposition that the CNR, as certified by one of the persons listed in 8 C.F.R. § 103.7(d)(4), is the only method by which the Government could prove that Defendant did not have permission to re-enter the United States. Defendant cites United States v. Urqhart, 469 F.3d 745, 748-49 (8th Cir. 2006),

3

but that case only holds that a CNR does not violate the Sixth Amendment right to confrontation after the Supreme Court's decision in Crawford v. Washington, 541 U.S. 36 (2004).

The Court holds that a CNR is not the only means by which the Government could establish that Defendant did not have permission to re-enter the United States. Further, even if Agents Pulley and Mitchell did not have the authority to testify regarding the absence of documentation showing Defendant had applied for and been granted permission to re-enter, there was other evidence that sufficiently established that element. For instance, evidence that Defendant presented false identification and counterfeited documents asserting Mexican citizenship was sufficient independent corroborating evidence of Defendant's post-arrest confession that he was actually a citizen of Honduras, had been deported, and had re-entered illegally. Therefore, Defendant's Motion for Judgment of Acquittal is denied.

IT IS SO ORDERED.

DATE: February 13, 2009

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
UNITED STATES DISTRICT COURT

4